**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **Trista Blake,** | **Case No. 1:25-cv-01141-PAB** |
| **Plaintiff,** | |
| -vs- | |
| | **JUDGE PAMELA A. BARKER** |
| **Dollar Bank,** | |
| **Defendant.** | **MEMORANDUM OPINION & ORDER** |

Currently pending before the Court is Defendant Dollar Bank's ("Defendant" or "Dollar Bank") Motion to Dismiss ("Defendant's Motion"). (Doc. No. 6.) On September 8, 2025, Plaintiff Trista Blake ("Plaintiff" or "Blake") filed an Opposition to Defendant's Motion ("Plaintiff's Opposition"), and on October 23, 2025, Dollar Bank filed a Reply in Support of Defendant's Motion. (Doc. Nos. 9, 13.) Also pending before the Court is Blake's Motion for Leave to File Proposed Amended Complaint ("Plaintiff's Motion"). (Doc. No. 10.) On October 2, 2025, Defendant filed its Opposition to Plaintiff's Motion ("Defendant's Opposition"), and on October 23, 2025, Blake filed a Reply in support of Plaintiff's Motion ("Plaintiff's Reply"). (Doc. Nos. 12, 15.) For the reasons stated herein, Plaintiff's Motion (Doc. No. 10) is GRANTED in part and Defendant's Motion (Doc. No. 6) is DENIED as moot. Blake shall file an Amended Complaint that is consistent with the conclusions set forth in this Memorandum Opinion and Order, within seven days of the filing of this Memorandum Opinion and Order. Defendant shall file its Answer within fourteen days of the filing of the Amended Complaint.

I.      **Allegations in the Proposed Amended Complaint**

A.      **Defendant hires Blake as a senior group banking representative**

Blake "began working for Defendant in or around October 11, 2022 as a Senior Group Banking Representative." (Doc. No. 10-1, ¶ 12.) Her "duties were those of an outside banking representative" and her "job duties included assisting Defendant's local Branch Managers generate business and sign up clients for new bank accounts." (*Id.* at ¶¶ 13–14.) "The majority of her tasks could be performed remotely, and her duties required her to become familiar with her business region and form relationships therein." (*Id.* at ¶ 14.) Blake "reported directly to Andrea Vasquez" who is the "VP of Group Banking." (*Id.* at ¶ 15.)

Blake's "work and training were to occur under Branch Managers at different bank locations within her assigned region" and she "would accompany Defendant's staff on visits to potential customers and develop business relationships in the field." (*Id.* at ¶¶ 16–17.) Blake "was eager to begin her work for Defendant and diligently engaged in the onboarding process after being hired." (*Id.* at ¶ 18.) Blake, however, "quickly realized that Defendant was disorganized and unprepared for her arrival." (*Id.* at ¶ 19.) Blake "was Defendant's only Group Banking employee based in Cleveland, Ohio" and "Ms. Vasquez was based in Pittsburgh, Pennsylvania and was rarely available to answer questions or address concerns." (*Id.* at ¶¶ 20–21.)

B.      **Blake begins to experience a medical condition**

"In or around December of 2022 and January of 2023 . . . Blake began to experience increasingly severe bowel symptoms, including but not limited to abdominal pain and incontinence." (*Id.* at ¶ 34.) Blake's "worsening episodes of abdominal pain and incontinence affected her day-to-day activities" and her "symptoms also impaired her psychologically." (*Id.* at ¶¶ 35–36.) Blake "consulted with her physician about her symptoms, though tests were yet inconclusive." (*Id.* at ¶ 38.)

"Uncertain of her disability's cause," Blake "continued to perform her work duties as they were assigned." (*Id.* at ¶ 39.)  But "Defendant's ongoing failure to properly train" Blake "caused her extreme distress and exacerbated her symptom." (*Id.* at ¶ 40.)  Blake "requested assistance from her local colleagues," but "Defendant's Branch Managers simply told her to contact Ms. Vasquez." (*Id.* at ¶ 41.)  "Ms. Vasquez, in turn, repeatedly failed to timely respond to [her] requests." (*Id.* at ¶ 42.)

### C.    Blake informs Defendant about her medical condition

Blake's "symptoms continued to worsen" and she "used PTO and informed Defendant about her symptoms." (*Id.* at ¶¶ 44–46.)  Then in December 2022, Blake "visited Ms. Vasquez in Pittsburgh, Pennsylvania to attend work events." (*Id.* at ¶ 47.)  Defendant advised Blake that "the purpose of the trip would be training, but the itinerary primarily involved attending a string of holiday parties instead." (*Id.* at ¶ 48.)  During the trip, Blake informed Ms. Vasquez (i) "about her abdominal and bowel symptoms," (ii) "that she was receiving medical treatment to determine the cause of her condition," (iii) "that her symptoms were becoming more frequent, more severe, and were exacerbated by stress," (iv) "that she had not received any proper training," (v) "that Defendant's failure to provide practical training exacerbated her stress and symptoms," and (vi) that she "requested accommodations including improved training procedures." (*Id.* at ¶ 49.)  During the trip, Blake also "suffered an episode of incontinence in front of Ms. Vasquez" and Blake "put Ms. Vasquez on notice of her medical disability and requested reasonable accommodations." (*Id.*)

Despite this, "Ms. Vasquez repeatedly failed to report her observations to Defendant's HR or to engage . . . Blake in interactive discussions for reasonable accommodations." (*Id.* at ¶ 52.)  After the trip, in January 2023, Blake "requested time off from work to treat her medical condition." (*Id.* at ¶ 53.)  In response, "Ms. Vasquez implemented a new requirement that Ms. Blake could not contact

any Branch Manager or go into their branch to perform her duties." (*Id.* at ¶ 54.)  Ms. Vasquez did not "implement a similar rule for non-disabled employees." (*Id.* at ¶ 55.)

"Upon being hired, Defendant told . . . Blake that her training period would take about six months," but in January 2023, "Ms. Vasquez abruptly cut [her] training period short and assigned her to begin performing field work." (*Id.* at ¶¶ 56–57.)  Blake again "advised Ms. Vasquez that she had not received adequate training for this assignment," and Ms. Vasquez "refused to allow" Blake "to complete her training period." (*Id.* at ¶¶ 58–59.)

Blake then "threw herself into field work despite her disability and symptoms" and "was eager to work and sought out Branch Managers to shadow, but continued to find opposition." (*Id.* at ¶ 60.) "Defendant's Branch Managers repeatedly declined or cancelled meetings to train" Blake "citing excuses such as poor weather or being too busy." (*Id.* at ¶ 61.)  "Out of Defendant's twenty-eight Branch Managers in Cleveland, Ohio, roughly twenty-two cancelled trainings with . . . Blake on multiple occasions and failed to reschedule." (*Id.* at ¶ 62.)

### D.      Defendant negatively responds to Blake's ongoing medical condition

Then, in February 2023, Blake "suffered an episode of incontinence while driving to a meeting with Defendant's executive board." (*Id.* at ¶ 63.)  Blake "immediately contacted Defendant's Office Manager to explain the situation and requested to attend the meeting virtually" and she "also contacted Defendant's HR Representative LaToya Dixon, Ms. Vasquez, and Ms. Vasquez's supervisor Shawn Hutchins." (*Id.* at ¶ 64.)  "Ms. Dixon, Ms. Vasquez, and Mr. Hutchins failed to respond" to Blake's calls or emails. (*Id.* at ¶ 65.)

"The following week, Ms. Vasquez drove from Pittsburgh to Cleveland to personally meet with" Blake. (*Id.* at ¶ 66.)  "During their meeting, Ms. Vasquez demanded to know why . . . Blake

called her supervisor, Mr. Hutchins, the week prior," and told Blake "that Mr. Hutchins was displeased at being contacted by Ms. Vasquez's subordinate." (*Id.* at ¶¶ 67–68.)  Blake "informed Ms. Vasquez that her call and absence were due to being ill," and, in response, "Ms. Vasquez threatened to fire [her] on the spot and issued her a formal verbal warning for insubordination."  (*Id.* at ¶¶ 69–70.)  Ms. Vasquez also instructed Blake "not to contact Ms. Vasquez's superior again and forbade [her] from contacting any of Defendant's other twenty-eight local Branch Managers for assistance or training."  (*Id.* at ¶ 71.)  Despite knowing "the impacts of . . . Blake's disability," Ms. Vasquez's "new requirements were the exact opposite of the assistance that . . . Blake had requested" and Ms. Vasquz did not "impose no-contact restrictions on similar non-disabled employees."  (*Id.* at ¶¶ 72–73.)

Blake then "spoke with Defendant's HR Representative Ms. Dixon."  (*Id.* at ¶ 74.)  Blake "explicitly informed Defendant about her medical disability and symptoms, advised that the prior week's incident was due to incontinence, and complained about Ms. Vasquez's discipline and threats of termination."  (*Id.* at ¶ 75.)  She "further complained to Ms. Dixon about not receiving sufficient training."  (*Id.* at ¶ 76.)  "Ms. Dixon failed to properly report . . . Blake's disability or complaints about Ms. Vasquez," and "Ms. Dixon [did not] engage . . . Blake in formal discussions about potential accommodations."  (*Id.* at ¶¶ 77–78.)  "Ms. Dixon merely advised . . . Blake to document when concerns arose and stated '[n]o job is worth sacrificing your health.'"  (*Id.* at ¶ 79.)

"Defendant's targeting of . . . Blake thereafter escalated."  (*Id.* at ¶ 80.)  "Defendant persisted in isolating [her] and subjecting her to materially worse terms and conditions of employment than her non-disabled peers."  (*Id.* at ¶ 81.)  "Defendant discouraged [her] from using PTO and other benefits to treat her disability symptoms because she had used sick days in the recent past" and "excluded

[her] from meetings concerning her department and her requests for assistance from other superiors went unanswered." (*Id*. at ¶¶ 82–83.)

Next, in March 2023, Defendant "instructed the twenty-eight Cleveland Branch Managers to collaborate with Group Banking in an effort to secure new accounts." (*Id.* at ¶ 84.)  But "[p]er Ms. Vasquez's orders," Blake was "forbidden from interacting with Branch Managers and she was excluded from this initiative." (*Id.* at ¶ 85.)  Then in April or May of 2023, Blake was issued "written discipline on two occasions," which occurred "shortly after [Blake asked] questions related to her deficient training and suffering incontinence during an executive meeting." (*Id.* at ¶ 86.)  Additionally, "Defendant held a Branch Manager training class but denied . . . Blake any opportunity to assist or provide input in growing the department." (*Id.* at ¶ 87.)  And "Ms. Vasquez began requiring . . . Blake to attend weekly performance calls yet refused to provide meaningful assistance to . . . Blake or assign her work tasks." (*Id.* at ¶ 88.)

### E.      Defendant terminates Blake's employment

"On or about May 10, 2023, . . . Blake was roughly five minutes late for a call with Ms. Vasquez due to assisting a bank branch colleague sign on a substantial new client." (*Id.* at ¶ 89.)  Blake "believed that Ms. Vasquez would be pleased," but instead, "Ms. Vasquez insulted . . . Blake for logging into the call late and threatened to terminate her." (*Id.* at ¶¶ 91–92.)  Blake then "began driving into the office immediately after the call but suffered from extreme abdominal pain en route" and "[s]he diverted herself to the hospital." (*Id.* at ¶ 93.)  Blake's "physicians placed her onto medical leave immediately for treatment and testing." (*Id.* at ¶ 94.)  Blake was "diagnosed [] with gallbladder disease and gallstones in the bile ducts connecting her gallbladder and liver" and she "timely informed Defendant of her diagnosis." (*Id.* at ¶¶ 98–99.)

 "Blake [also] requested and was approved for Short Term Disability leave."  (*Id.* at ¶ 95.)

Thereafter, "Blake provided Defendant with a doctor's note, advised Defendant that her disability

would require surgery in August of 2023, and requested an extension of her STD leave until that

time."  (*Id.* at ¶ 100.)  "Only days later, on July 5, 2023, Defendant rejected . . . Blake's request and

fired her effective immediately."  (*Id.* at ¶ 101.)  Defendant advised Blake "that she was terminated

because the company needed to fill her job position and could not hold the role open."  (*Id.* at ¶ 106.)

However, on or about October 6, 2023, the Unemployment Compensation Review Commission

"found that Ms. Blake was able to return to work on August 28, 2023[,]" and "Defendant failed to

fill the Senior Group Banking position for roughly six months or longer."  (*Id.* at ¶ 108, 111.)

### F.  Blake dual files a charge of discrimination

On October 24, 2023, Blake dual filed a *pro se* charge of discrimination against Defendant

with the Equal Employment Opportunity Commission ("EEOC").  (*Id.* at ¶ 8.)  Therein, Blake alleges,

in relevant part,

> I began my employment with the Respondent in or around October 2022. My most recent position was Senior Group Banking Representative.
>
> On or about May 10, 2023, I was approved for a medical leave of absence. In or around July 2023, I submitted a letter to Human Resources from my doctor stating that I was having surgery and required additional time off. The letter stated that I could return to work on August 28, 2023. On or about July 5, 2023, I was discharged.
>
> I believe I was discriminated against because of my disability, in violation of Title I of the Americans with Disabilities Act of 1990, as amended.

(Doc. No. 6-2, PageID #58.)[1]

---

[1] Although not attached to the Amended Complaint, the Court can consider the EEOC Charge because it is referenced in the Amended Complaint, and it is central to Blake's claims.  *See, e.g.*, *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss

On October 10, 2024, "the EEOC found probable cause that Defendant violated the law by denying . . . Blake reasonable accommodations and discharging her because of her disability." (Doc. No. 10-1 at ¶ 112.)  The EEOC found in a letter of determination that:

Charging Party alleges that the Respondent denied her a reasonable accommodation and discharged her because of her disability, in violation of the ADA.

Respondent denies Charging Party's allegations. Respondent states that Charging Party did not have a physical or mental condition that substantially limited a major life activity. Respondent further states that Charging Party was not a qualified individual who was able to perform the essential functions of her job, with or without a reasonable accommodation. Respondent asserts that Charging Party's ongoing attendance, tardiness, and missed meetings demonstrated that she could not perform the essential functions of her job. Respondent asserts that Charging Party was discharged for a legitimate non-discriminatory reason because she had been on an extended leave of absence and was requesting more time off while her position remained vacant. Respondent asserts it needed to fill Charging Party's position.

The information and evidence gathered during the investigation shows that Charging Party was a qualified individual with a disability who required a reasonable accommodation in the form of a leave of absence. Charging Party notified Respondent of her disability and need for leave as a reasonable accommodation. Instead of engaging in the interactive process and providing the Charging Party a reasonable accommodation, Respondent discharged the Charging Party. While Respondent asserts holding Charging Party's position open would pose an undue hardship, Respondent failed to support its undue hardship defense. The reasons asserted by Respondent for the actions taken are pretextual.

Based on the foregoing, I have determined that there is reasonable cause to believe that Respondent discriminated against the Charging Party, by denying her a reasonable accommodation and discharging her on or about July 5, 2023, because of her disability, in violation of the ADA.

(Doc. No. 9-3, PageID #96–97.)[2]

---

so long as they are referred to in the Complaint and are central to the claims contained therein"); *EEOC v. Kaplan Higher Educ. Corp.*, 790 F. Supp. 2d 619, 620, n.1 (N.D. Ohio 2011) ("Defendant attached the EEOC charge to its motion to dismiss. Such a document is properly considered by the Court in resolving the motion").

[2] The Court can also consider the EEOC's letter of determination because it is referenced in the Amended Complaint and is central to Blake's claims.  *See* Note 1, *supra; see also Maeder v. Hollywood Casino*, 97 F. Supp. 3d 941, 943 (S.D. Ohio 2015) (considering EEOC letter of determination that was attached to the defendant's motion to dismiss); *Ward v.*

This lawsuit followed.

## II.     Procedural background

On June 2, 2025, Blake filed her Complaint against Defendant.  (Doc. No. 1.)  On August 4, 2025, Defendant moved to dismiss Blake's Complaint.  (Doc. No. 6.)  On September 8, 2025, Blake filed Plaintiff's Opposition and Plaintiff's Motion.  (Doc. Nos. 9, 10.)  On October 2, 2025, Dollar Bank filed Defendant's Reply and Defendant's Opposition.  (Doc. Nos. 12, 13.)  On October 23, 2025, Blake filed Plaintiff's Reply.  (Doc. No. 15.)  Accordingly, Defendant's Motion and Plaintiff's Motion are ripe for review.

## III.     Standard of Review

Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, if amending the complaint is 'futile,' the court need not grant a motion to amend. *See Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "An amendment is futile when, after including the proposed changes, the complaint still 'could not withstand a Rule 12(b)(6) motion to dismiss.'" *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022) (quoting *Rose v. Harford Underwriters Ins. Co*., 203 F.3d 417, 420 (6th Cir. 2000)).  In other words, when a defendant opposes a plaintiff's motion to amend under Rule 15 as futile, the court looks to the "substance of the proposed amendment" to determine if the proposed amended complaint could withstand a Rule 12(b)(6) motion to dismiss. *See Beydoun*, 871 F.3d at 469 (quoting *Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc*., 288

---

*D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 120, n.2 (D.D.C. 2011) (considering EEOC letter of determination not attached to the complaint because "the charge of discrimination is referred to in the complaint [and that] reference [] also necessarily incorporates in the complaint the letter of determination resulting from the charge").

F.3d 895, 906 (6th Cir. 2002)).

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)).  For purposes of Rule 12(b)(6), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly,* 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific

10

facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## IV.    Analysis

Since Blake has requested leave to file an amended complaint and Defendant believes amendment would be futile (Doc. No. 12, PageID #146), the Court's analysis begins with whether the claims set forth in Blake's proposed Amended Complaint would survive a motion to dismiss. Blake's six count proposed Amended Complaint contains three claims under the ADA (Counts II, IV, and VI) and three identical claims brought under O.R.C. § 4111.02 (Counts I, III, and V). The Court first analyzes whether Blake's federal claims state a claim and then will turn to Blake's state law claims.

### A.    Blake's ADA claims as set forth in her proposed Amended Complaint partially survive dismissal under Rule 12(b)(6)

Prior to bringing an ADA claim in federal court, a plaintiff must exhaust her administrative remedies. *Bullington v. Bedford Cty.*, 905 F.3d 467, 469 (6th Cir. 2018) (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000)). To do so, the plaintiff must file a charge with the EEOC. *Id.* Filing the charge, however, does not necessarily preserve the claim for judicial review.

Generally, the failure to include a claim in a EEOC charge bars a plaintiff from bringing that claim in court. *See, e.g.*, *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361–62 (6th Cir.

11

2010).  "The purpose of the requirement is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (citing *Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998)).  Failing to state the correct legal claim or conclusions in an EEOC complaint is not dispositive, however.  Instead, in this Circuit, a plaintiff can exhaust her administrative remedies if "the claim can be reasonably expected to grow out of the EEOC charge." *Weigel v. Babtist Hosp.*, 302 F.3d 367, 367 (6th Cir. 2002) (quoting *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001)).  Accordingly, a claim is preserved if the facts set forth in the EEOC charge "would prompt the EEOC to investigate a different, uncharged claim." *Pemberton v. Bell's Brewery, Inc.*, 150 F.4th 751, 761 (6th Cir. 2025) (quoting *Younis*, 610 F.3d at 362).  In answering this question, the Sixth Circuit has instructed that "*pro se* complaints are construed liberally." *Id.*

Under this standard, Defendants asserts that Blake failed to exhaust her administrative remedies for all three of her ADA claims.  The Court addresses the parties' arguments concerning each claim in turn below.[3]

---

[3]Although the failure to exhaust administrative remedies is an affirmative defense, the Sixth Circuit has found that a district court may properly dismiss a complaint based on this defense. *Robinette v. Union Hosp.*, No. 17-3471, 2018 U.S. App. LEXIS 7357, at *4 (6th Cir. Mar. 22, 2018) ("Here, it is undisputed that Robinette did not file an EEOC charge before she filed her Title VII complaint in the district court. Robinette's complaint therefore was subject to dismissal for failure to exhaust administrative remedies"); *Williams v. Northwest Airlines*, 53 F. App'x 350, 351 (6th Cir. 2002) ("Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of a Title VII or ADA action"). Therefore, the Court may properly dismiss Blake's claims to the extent she failed to exhaust her administrative remedies. *Mayers v. Sedgwick Claims Mgmt. Servs.*, 101 F. App'x 591, 593 (6th Cir. 2004) (affirming dismissal of ADA and Title VII claims based on failure to exhaust administrative remedies); *Bryant v. McDonough*, No. 1:20-cv-00726, 2021 U.S. Dist. LEXIS 221273, at *9–11 (N.D. Ohio Nov. 17, 2021) (Barker, J.) (dismissing ADA claim under Rule 12(b)(6) based on plaintiff's failure to exhaust his administrative remedies); *Parsons v. Buehler's Asphalt Paving, Inc.*, No. 3:21CV567, 2021 U.S. Dist. LEXIS 121709, at *4 (N.D. Ohio June 30, 2021) (dismissing ADA claim under Rule 12(b)(6) because there was "no mention of Plaintiff's disability, nor allegations of any conduct by Defendants which violates the ADA" in the plaintiff's EEOC charge).

### 1. Plaintiff fails to state a claim for ADA Retaliation in her proposed Amended Complaint

In Defendant's Opposition, Dollar Bank argues that Blake's "retaliation claims are based on events that purportedly occurred during her employment, before her termination, and before the filing of her EEOC Charge." (Doc. No. 12, PageID #138–39.)  According to Defendant, Blake "asserts these claims for the first time before this Court." (*Id.* at PageID #139.)  Defendant asserts that the EEOC Charge lacks "any allegations of and references to protected activities (other than her request for medical leave), indications of a retaliatory motive, or explicit assertions of 'retaliation' that would substantiate such a claim." (*Id.*)  Defendant further asserts that "Plaintiff's purported accommodation requests for improved training procedures and flexible work arrangements are missing from the Charge, which, again, solely focuses on her medical leave of absence." (*Id.*)  Defendants claim that "the EEOC's investigation and conciliation efforts were exclusively centered on her medical leave." (*Id.*)

In Plaintiff's Reply, Blake argues that in her proposed Amended Complaint she "described her protected activities and their causal relationship with her termination on multiple occasions," and because she filed the charge *pro se* she "was not required to utter the magic word 'retaliation' in order to bring her claims through an EEOC charge form." (Doc. No. 15, PageID #171.)  According to Blake, she "highlighted the close temporal proximity between her protected activity and termination in her EEOC Charge," and the EEOC's determination "explicitly links Ms. Blake's disability and need for accommodation with her termination by Defendant." (*Id.*)

Upon review of Blake's *pro se* EEOC Charge, the Court finds that a retaliation claim could not reasonably be expected to grow out of allegations set forth therein.  In reaching this conclusion, the Court is persuaded by Defendant's citation to *Yanick v. Kroger Co. of Mich.*, No. 23-1439, 2024

13

U.S. App. LEXIS 10563 (6th Cir. Apr. 29, 2024). There, the Sixth Circuit, after liberally construing the plaintiff's *pro se* EEOC charge, held that the plaintiff could not pursue a retaliation claim. The Sixth Circuit noted that the plaintiff did not check the retaliation box on her EEOC charge. *Id.* at *22. And the Sixth Circuit noted that the only "potentially protected activity [plaintiff] mentions [in her EEOC charge] is that she took medical leave," but concluded that "that statement alone does not provide sufficient notice for retaliation." *Id.* at *23–24. The Sixth Circuit thus held that "a retaliation claim could not reasonably grow out of [plaintiff's] charge." *Id.* at *23.

As in *Yanick*, Blake did not check the retaliation box in her EEOC charge. Like the plaintiff's charge in *Yanick*, Blake's EEOC Charge contains allegations regarding a request for medical leave, and nothing more. *Yanick* instructs that an employee does not allege a retaliation claim in an EEOC charge by merely alleging that the employee requested leave. *See also Coles v. Johnny Appleseed Broad Co.*, 479 F. Supp. 3d 585, 610 (N.D. Ohio 2020) (Barker, J.) (holding that an EEOC charge that provided "I requested a reasonable accommodation on April 12, 2017, and Respondent denied my accommodation request and terminated my employment" insufficient to "put the EEOC on notice of a separate retaliation claim"). Therefore, under *Yanick*, Blake cannot pursue a retaliation claim based on allegations that she requested medical leave.

For similar reasons, the Court finds that Blake's retaliation claim fails with respect to the other alleged protected activities. Blake alleges in the Amended Complaint that, in addition to seeking medical leave, she "engaged in a protected activity by requesting reasonable accommodation for her disability" by requesting "improved training procedures" and "flexible work locations." (Doc. No. 10-1, ¶ 164.) Blake also alleges that, in addition to terminating her employment, Defendant "purposefully retaliated against" her by "refusing her reasonable accommodation, and/or by

otherwise discriminating against her in the terms, privileges and conditions of employment." (*Id.* at ¶ 166.)  These facts are not mentioned in the EEOC Charge.  There is nothing in the EEOC Charge concerning her alleged lack of training or her alleged request for "flexible work locations."  Blake's EEOC Charge is limited to one incident (her termination).  The Court therefore finds that any alleged retaliation based on training or work locations would not be "reasonably expected to grow out of the EEOC charge," *Weigel*, 302 F.3d at 367, and "would [not] prompt the EEOC to investigate [these] uncharged claim[s]." *Pemberton*, 150 F.4th at 761.

In sum, the Court finds that Blake's proposed Amended Complaint fails to state a claim for ADA retaliation based upon her failure to exhaust her administrative remedies.

> **2.      Blake's proposed ADA failure-to-accommodate claim partially survives dismissal**

In Defendant's Opposition, Dollar Bank argues that "Plaintiff alleges—for the first time—that Dollar Bank failed to accommodate her requests for 'improved training procedures, flexible work location, and time off in excess of prior STD.'" (Doc. No. 12, PageID #140.)  According to Defendant, "the [charge] does not mention Plaintiff's request for 'improved training procedures, flexible work locations, and time off work,' Dollar Bank's denial of such requests, nor does it make any reference to events Plaintiff now alleges occurred prior to July 2023 and as early as December 2022." (*Id.*)  Defendant asserts that "[l]ike her retaliation claims, Plaintiff's failure to include these claims in her Charge led the EEOC and Dollar Bank to center the investigatory and conciliatory process only on Plaintiff's medical leave of absence." (*Id.*)  Defendants assert that "because claims of 'unlawful termination and failure to accommodate are separate and distinct under the ADA,' Plaintiff's failure to accommodate claim does not logically stem from the Plaintiff's termination claim." (*Id.* at PageID #141.)

15

In Plaintiff's Reply, Blake asserts that "Defendant has admitted to knowing that Ms. Blake possessed claims for disability discrimination and failure to accommodate." (Doc. No. 15, PageID #170–71.) According to Blake, her "Charge established her disabled status, request for accommodations, and termination shortly thereafter." (*Id.* at PageID #171.) Blake further asserts that "[t]he [EEOC's] Determination also states that Ms. Blake complained of failure to accommodate and discharge because of her disability," and that it "analyzed every element of claims for discrimination, failure to accommodate, retaliation, and pretext, and applied them to this matter's facts." (*Id.*)

The Court agrees, in part, with Blake. As explained above, the pertinent question is whether the facts alleged in the EEOC Charge "would prompt the EEOC to investigate a different, uncharged claim." *Pemberton*, 150 F.4th at 761. The problem with Defendant's position is that the facts alleged in the EEOC charge actually prompted the EEOC to investigate Blake's failure to accommodate claim with respect to Blake's termination. In the EEOC's letter of determination, the EEOC stated that "Charging Party alleges that the Respondent denied her a reasonable accommodation and discharged her because of her disability, in violation of the ADA," that "Respondent further states that Charging Party was not a qualified individual who was able to perform the essential functions of her job, with or without a reasonable accommodation," and "[t]he information and evidence gathered during the investigation shows that Charging Party was a qualified individual with a disability who required a reasonable accommodation in the form of a leave of absence." (Doc. No. 9-3, PageID #96–97.) The Court therefore finds that Blake exhausted her administrative remedies for her failure-to-accommodate claim based upon her request for medical leave.[4]

---

[4] Defendant's citation to *Jones v. Sumser Retirement Village*, 209 F.3d 851, 854 (6th Cir. 2000) does not mandate a different outcome. It is true, as Defendant contends, that the *Jones* courts stated that "[a] termination claim differs in kind

16

However, Defendant is correct when it argues that "the [charge] does not mention Plaintiff's request for 'improved training procedures, flexible work locations, and time off work,' Dollar Bank's denial of such requests, nor does it make any reference to events Plaintiff now alleges occurred prior to July 2023 and as early as December 2022." (Doc. No. 12, PageID #140.)  In the proposed Amended Complaint, Blake alleges that Defendant requested reasonable accommodations in the form of "improved training procedures" and "flexible work locations."   (Doc. No. 10-1 at ¶¶ 173, 175.)  But as explained above, the EEOC Charge is limited to Blake's request for leave.  And, as shown by the EEOC's letter of determination, the EEOC did not investigate Defendant's alleged failure to accommodate the "improved training procedures" and "flexible work locations." (*See* Doc. No. 9-3.) The only reasonable accommodation mentioned in the letter of determination is Plaintiff's request for leave.  (*Id.*)

Accordingly, the proposed Amended Complaint states a failure-to-accommodate claim, except that it fails to state a failure-to-accommodate claim based on Blake's alleged requests for reasonable accommodations in the form of "improved training procedures" and "flexible work locations."

### 3.      Blake's proposed ADA discrimination claim partially survives dismissal

Defendant does not dispute in its Opposition that "the Charge does assert a claim of disability

---

and date from an accommodation claim."  *Id.*  But in finding that the plaintiff did not allege facts that would prompt investigation into an accommodation claim, the *Jones* court found "the facts relevant to the termination of February 7, and an alleged failure to accommodate on January 11, are far different."  *Id.*  The facts related to the January 11 incident were related to the plaintiff's need for help washing dishes and the facts related to the February 7 termination involved the plaintiff's absence from work due to her disability.  *Id.* at n.1.  And importantly, the plaintiff did not inform the OCRC about the facts related to her failure to accommodate claim until after the OCRC denied her termination claim, and the plaintiff never filed a charge with the EEOC. By contrast, here, the facts underlying each of Plaintiff's ADA claims are premised upon the same core nucleus of facts—Blake requested leave, Defendant did not give her leave, and Defendant terminated her.  And, unlike *Jones*, the failure-to-accommodate claim did in fact grow out of the EEOC's investigation into Blake's EEOC Charge.

discrimination . . . based only on Plaintiff's termination."  (Doc. No. 12, PageID #142.)  Defendant does, however, argue that "[t]he Charge does not encompass any information regarding other significant incidents or circumstances that could support a broader discrimination claim, including those that purportedly occurred well before her termination."  (*Id.* at PageID #144.)  Despite acknowledging that "Plaintiff's Charge does assert a claim of disability discrimination," Defendant asserts that "Plaintiff's discrimination claims were not properly exhausted."  (*Id.* at PageID #144–45.)  Blake does not directly respond to these arguments in Plaintiff's Reply.

The Court will not dismiss Blake's discrimination claim in full.  Blake's proposed Amended Complaint sets forth the following allegations concerning Defendant's actions that Blake asserts demonstrate that Defendant discriminated against her:

152. Defendant discriminated against Plaintiff because of her disability by terminating her after she asked for a small amount of additional time off work.

153. Defendant discriminated against Plaintiff when it failed to engage in the interactive process by ignoring and/or rejecting Plaintiff's reasonable accommodation requests.

154. Defendant discriminated against Plaintiff because of her disability by taking the following non-exhaustive list of actions: terminating her employment, retaliating against her, delaying her request for reasonable accommodation, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment.

(Doc. No. 10-1, ¶¶ 152–54.)  These allegations cover: (1) Blake's termination; (2) Defendant's failure "to engage in the interactive process and/or rejecting Plaintiff's reasonable accommodation requests;" (3) Defendant's alleged retaliation; and (4) Defendant "discriminating against her in the terms, privileges and conditions of employment."

The EEOC Charge, as explained at length above, expressly covers Blake's termination and uses the word "discriminated."  Further, the EEOC Charge did in fact prompt the EEOC to investigate

Defendant's alleged failure "to engage in the interactive process and/or rejecting Plaintiff's reasonable accommodation requests," because the EEOC determined that "[i]nstead of engaging in the interactive process and providing the Charging Party a reasonable accommodation, Respondent discharged the Charging Party." (Doc. No. 9-3, PageID #96.) And the allegations in the EEOC Charge plainly relate to Blake's allegation in her Amended Complaint that Defendant "discriminat[ed] against [an employee] in the terms, privileges and conditions of employment." The only allegation that has not been exhausted, as explained above, is the allegation that Defendant retaliated against Blake. Accordingly, the proposed Amended Complaint states a discrimination claim, except that it fails to state a discrimination claim based on Defendant's alleged retaliation.

> **B.      Blake's proposed state law claims partially survive dismissal under Rule 12(b)(6)**

In Defendant's Opposition, Dollar Bank argues that "[t]he fact that Plaintiff's EEOC Charge may be considered dual-filed with the OCRC does not change the fact that it lacks any reference to violations of the OCRA." (Doc. No. 12, PageID #145.) Defendant points out that "neither the EEOC's Determination Letter nor its Notice of Right to Sue made any mention of the OCRA." (*Id.*) Defendant further argue that "[b]ecause Plaintiff's state law claims are identical to her federal law claims, Plaintiff failed to properly exhaust her state law claims for the [same] reasons." (*Id.*)

In Plaintiff's Reply, Blake asserts that "Defendant received a copy of Ms. Blake's dual filed EEOC Charge on or about October 24, 2023." (Doc. No. 15, PageID #172.) According to Blake, "[t]he Charge's Privacy Act Statement states that (1) '[t]his form is used to provide facts that may establish the existence of matters covered by EEOC statutes (and as applicable, other federal, state or local laws),' and (2) among the Charge's principal purposes are to preserve private suit rights and 'to invoke the EEOC's jurisdiction and, where dual-filing or referral agreements exist, to begin state or

local proceedings.'" (*Id.*)  Blake further argues that "Defendant's argument that Ms. Blake cannot bring her state law claims because her Charge did not cite an Ohio Revised Code chapter has been denied by Ohio federal courts as recently as 2024." (*Id.*)

The Court finds that Blake complied with Ohio law by dual filing her charge with the EEOC. As with Title VII and ADA claims, "plaintiffs must exhaust Ohio employment discrimination and retaliation claims by first filing a charge with the Ohio Civil Rights Commission ('OCRC') and obtaining a right-to-sue letter from that commission." *Day v. Enter. Mobility*, No. 3:25-cv-296, 2025 U.S. Dist. LEXIS 158336, at *6 (N.D. Ohio Aug. 15, 2025) (citing O.R.C. § 4112.052(B)(1)).  Under O.R.C. § 4112.052(B)(2), however, a right to sue letter from the OCRC is not necessary "if the complainant (i) filed a charge with the OCRC, (ii) filed a charge with the EEOC, and (iii) received a right to sue notice from the EEOC." *Showman v. Q Corp. Holdings, LLC*, No. 1:23-cv-00986, 2024 U.S. Dist. LEXIS 6423, at *13, n.5 (N.D. Ohio Jan. 12, 2024) (Barker, J.).   Here, Blake alleges that she "dual filed her charge of discrimination against Defendant with the Equal Employment Opportunity Commission ('EEOC') on or about October 24, 2023," and that she received a "Right to Sue letter from the Equal Employment Opportunity Commission." (Doc. No. 10-1, ¶¶ 8, 11.) By alleging that she "dual filed," her charge and receiving a right to sue letter from the EEOC, Blake complied with O.R.C. § 4112.052(B)(2).[5]

As with Blake's ADA claims, merely filing a charge does not mean she exhausted her administrative remedies.  Courts have applied the exhaustion requirements applicable to federal

---

[5] "[C]harges of discrimination with the OCRC are 'dual filed,' meaning that OCRC forwards a copy of the charge to the EEOC, which then opens its own file for the charge." *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, n.3 (6th Cir. 2021) (citing *Ross v. ITT Cleveland Motion Control*, No. 1:09 CV 2220, 2010 U.S. Dist. LEXIS 18651, at *8 (N.D. Ohio Mar. 2, 2010)).  "If dual filed, the EEOC charge and OCRC charge are identical." *Botter v. Morning*, No. 1:18-cv-00847, 2019 U.S. Dist. LEXIS 98748, at *2, n.2 (S.D. Ohio June 11, 2019) (quoting *Ross*, 2010 U.S. Dist. LEXIS at *8).

discrimination claims to claims brought under Ohio's discrimination statute. *Fisher v. N-Stock Box, Inc.*, No. 1:23-cv-15, 2025 U.S. Dist. LEXIS 72376, at *5 (S.D. Ohio Apr. 16, 2025); *Majors v. Gen. Dynamics Land Sys.*, No. 3:23-cv-2184, 2024 U.S. Dist. LEXIS 120550, at *29 (N.D. Ohio July 10, 2025); *Glenn v. Trumbull Cnty. Comm'rs*, 239 N.E.3d 1010, 1022 (Ohio App. 11th Dist. 2024). In this case, Blake's state law claims directly mirror her ADA claims. As with her ADA claims, Blake brings a retaliation claim, a failure-to-accommodate claim, and a discrimination claim pursuant to O.R.C. § 4112.02. These claims are based on the same allegations as her three ADA claims. Accordingly, Blake's state law claims partially fail to state a claim for the same reasons explained above with respect to her ADA claims.[6]

### C. The Court grants Blake's Motion for Leave to Amend

In sum, the Court finds that Blake's proposed Amended Complaint partially withstands a Rule 12(b)(6) challenge. The Court further finds that Blake's discriminations claims (Counts I and II) fail to state a claim to the extent that they are based on any alleged retaliation; Blake's retaliation claims fail as a matter of law (Counts III and IV); and Blake's failure-to-accommodate claims fails to state a claim to the extent they are premised upon Blake's alleged requests for reasonable accommodations in the form of "improved training procedures" and "flexible work locations." Accordingly, the Court grants Blake's Motion and orders her to file an Amended Complaint that only contains the claims that would withstand a Rule 12(b)(6) challenge as explained in this Memorandum Opinion and Order. The Amended Complaint shall not contain the claims identified in this

---

[6] The Court also rejects Defendant's argument that Blake was required to cite Ohio law in her charge. As Plaintiff correctly points out, at least one court has rejected Defendant's argument. *Dadosky v. Mid-Am. Conversion Servs. LLC*, No. 2:22-cv-02503, 2024 U.S. Dist. LEXIS 57907, at *14 (S.D. Ohio Mar. 29, 2024) (holding that an EEOC charge that cited federal law sufficiently covered Ohio law claims based on the same theory). Defendant has not cited any conflicting authority.

Memorandum Opinion and Order that the Court has identified as futile.

### D.      The Court denies Defendant's Motion to Dismiss

"The general rule is that filing an amended complaint moots pending motions to dismiss." *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021).  Because the Court is granting Blake leave to file an Amended Complaint that includes claims outlined immediately above because they would not futile since they would withstand a 12(b)(6) challenge, the Court denies Defendant's Motion to Dismiss as moot.  *Helms v. Aramark Corr. Servs.*, No. 3:22-cv-1557, 2022 U.S. Dist. LEXIS 231412, at *2 (N.D. Ohio Dec. 21, 2022); *Doe v. Oberlin College*, No. 1:17CV1335, 2018 U.S. Dist. LEXIS 237046, at *6 (N.D. Ohio Feb. 23, 2018).

### V.      Conclusion

For the reasons set forth herein, Blake's Motion for Leave to Amend (Doc. No. 10) is GRANTED in part and Defendant's Motion to Dismiss (Doc. No. 6) is DENIED as moot.  Blake shall file an Amended Complaint that is consistent with the conclusions set forth in this Memorandum Opinion and Order, within seven days of the filing of this Memorandum Opinion and Order. Defendant shall file its Answer within fourteen days of the filing of the Amended Complaint.

**IT IS SO ORDERED.**

    *s/Pamela A. Barker*
PAMELA A. BARKER
Date:  March 12, 2026                U. S. DISTRICT JUDGE